**E-Filed on** _____12/20/05_____

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANDREA Z. CHRISTIAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LUCILE PACKARD CHILDREN'S HOSPITAL,<br><br>　　　　Defendant. | Civil No. C-04-02744 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket Nos. 36, 43, 47]** |

　　　Defendant Lucile Packard Children's Hospital ("LPCH") moves for summary judgment in the employment discrimination case brought by plaintiff Andrea Christian. For the reasons given below, the court grants defendant's motion for summary judgment.

## I. BACKGROUND

**A.　Factual Background**

　　　Plaintiff is an African-American woman. She was employed as a social worker at in the hematology/oncology service ("Hem/Onc") of LPCH from 1987 to 2003. There were three social workers in the Hem/Onc team: plaintiff; Peggy Chavez, a Latina woman; and Frances Politeo, a white woman, who

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH

1    was hired in 2002.  All social workers in the Hem/Onc team worked on a part-time basis until 2002.

2    Plaintiff had a .8 FTE position[1] with a schedule of 8:30 a.m. to 5 p.m. Monday through Thursday.

3           In June 2000, plaintiff received an annual performance evaluation from her then-supervisor,

4    Director of Social Services Mark Mendelow, in which, although grading plaintiff's performance as meeting

5    expectations, Mendelow made some negative comments about plaintiff's problems with accepting feedback

6    and the difficulty other staff members had approaching her.  Quintel Decl., Ex. B at 4.  Plaintiff alleges that

7    Mendelow made comments that because she was a "big and black woman," her co-workers were

8    intimidated and threatened by her, Moore Decl., Ex. 24 (Christian Depo. at 272), and that he yelled at

9    plaintiff during staff meetings and restricted her talking.  Chavez Decl. ¶ 3.  On January 24, 2001, plaintiff

10   made a complaint to LPCH Senior Employee Labor Relations Specialist Joan Nichols against Mendelow

11   for racial discrimination.  After conducting an investigation, Nichols issued a report finding the complaint to

12   be without merit on February 16, 2001.

13          In 2001, Jack Komejan became the Director of Social Services and plaintiff's immediate

14   supervisor.  In September 2001, three months after becoming plaintiff's supervisor, Komejan completed his

15   first annual performance evaluation for plaintiff.  He rated plaintiff as meeting expectations in most areas

16   while noting that he had concerns about plaintiff's ability to resolve interpersonal conflicts effectively and her

17   lack of reception to feedback from colleagues.

18          In April 2002, plaintiff suffered a pulmonary embolism and was hospitalized.  As a result, she took

19   a three-month medical leave ("first medical leave").  She was also diagnosed with anemia, severe

20   menorrhagia and sleep apnea.  Plaintiff returned work from medical leave in early August 2002 and

21   requested accommodations because of her medical conditions.[2]  One of the accommodations requested by

22   plaintiff was to limit her caseload to a clinic-based population, excluding the inpatient population.  This

23   request was denied by Komejan and Senior Employee Labor Relations Specialist Laurie Quintel, citing the

24   "continuum of care" policy of the Social Services Department.  Defendant asserts that this policy is

---

[1]    This denotes that the position requires 80% of the hours required of a full-time position.

[2]    The parties dispute when plaintiff presented her medical restrictions to defendant.  Plaintiff states that she notified Komejan that she had to take it easy and limit physical movement and stress exposure.  Pl.'s Decl. ¶ 14; Ex. 2 (Summary of Accommodations for Andrea Christian).  Defendant contends, on the other hand, that plaintiff returned to work without limitations and did not produce a doctor's note about her restrictions until August 22, 2002.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH                                                        2

1  important because it provides the children and their families a degree of predictability and reassurance
2  during their treatment through many different departments in LPCH.  Plaintiff also asked for reduced hours.
3         On September 4, 2002, plaintiff presented to Komejan a note from her doctor requesting a leave
4  from September 9 to 24 for medical reasons together a work restriction letter.  Komejan Decl., Exs. H, I.
5  Politeo sent a email to Komejan suspecting that the requested medical leave might be planned vacation.
6  Komejan Decl., Ex. J.  Defendant also states that there is no reference to the requested leave in the letter
7  for medical restrictions and the signatures on the two documents do not look alike.  Komejan and Quintel
8  then asked plaintiff to produce additional documents proving that she needed the medical leave.  Plaintiff
9  submitted another note from her doctor the next day and her request was granted.
10        On October 10, 2002, Komejan provided plaintiff with her annual performance evaluation for the
11 period form August 1, 2001 to September 1, 2002, in which plaintiff was graded not meeting expectations
12 for nine performance areas.
13        In October 2002, Komejan restructured the Hem/Onc team, eliminating part-time positions and
14 transferring all to full time positions.  On November 13, 2002, the three social workers then employed were
15 given the opportunity to accept the full time positions.  The other choices were  transferring to an available
16 open part-time position or termination.  Plaintiff was given one extra month to consider.
17        On November 18, 2002, plaintiff filed a complaint with the California Department of Fair
18 Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC")
19 charging disability discrimination against defendant.  The EEOC dismissed the complaint based on its finding
20 that plaintiff was "not a qualified individual with a disability" and issued a right to sue letter to plaintiff on
21 December 12, 2003, notifying plaintiff that she had ninety days from the receipt of the letter to initiate a
22 lawsuit in a district court.  Laurenson Decl., Exs. D and E.
23        On December 19, 2002, plaintiff was offered a twenty-hour-per-week position in the
24 gastroenterology clinic.  Plaintiff did not accept that position because although it required fewer hours, it
25 would require plaintiff to work on four days instead of three, as plaintiff desired.  On January 22, 2003,
26 plaintiff began her second medical leave.  The first part of this absence was authorized by FMLA and was
27 exhausted on April 12, 2003.  On March 27, plaintiff requested a personal leave from April 12 to August
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH                                                    3

1  31, 2003. The request form that plaintiff signed informed plaintiff that if she failed to return on August 31,
2  2003, her "employment will be considered voluntarily terminated" by her. Pl.'s Decl., Ex. 16.
3      In February 2003, plaintiff started working for Alameda County in Oakland in a paid position for
4  three days a week. Pl.'s Decl. ¶ 46. Plaintiff did not notify defendant of her new employment.  P. & A. in
5  Supp. Mot. Summ. J. ("MSJ") at 12. During April or May of 2003, plaintiff rejected another offer from
6  defendant for a twenty-four-hours-per-week, four-days-per-week position in an affiliated clinic in Fremont,
7  which was very close to plaintiff's home. In September 2003, prior to her release from LPCH, plaintiff
8  commenced a teaching job at the Hayward State University one night a week while continuing working for
9  Alameda County. MSJ at 12; Pl.'s Decl. ¶ 46. Plaintiff did not report to LPCH or otherwise communicate
10 with defendant on or after August 31, 2003. On September 25, 2003, LPCH terminated plaintiff's
11 employment there.

12 **B.    Procedural Background**

13     On July 8, 2004, plaintiff filed this action alleging eight causes of action. Two of them were
14 dismissed by the court as time-barred because plaintiff failed to sue within 90 days of from her receipt of
15 notice of right to sue. Order Granting Def.'s Mot. to Dismiss Pl.'s Third and Fifth Causes of Action;
16 Granting Req. for Judicial Notice. These claims are claim three ("intentiona[l] discriminat[ion] against
17 plaintiff on the grounds of her medical conditions by failing and refusing to interact in good faith with her to
18 achieve a reasonable accommodation in violation of California Government Code § 12940(a)") and claim
19 five ("intentiona[l] retaliat[ion] against plaintiff for opposing practices which she believed violated California
20 Government Code § 12940(a) and the ADA and retaliat[ion] against her for participating in protected
21 proceedings in violation of California Government Code § 12940(h)"). 1st Am. Compl. ¶¶ 22, 26.
22 Plaintiff's EEOC complaint covers alleged discriminatory conduct by defendant from August 19, 2002, to
23 October 31, 2002. Laurenson Decl., Ex. D.
24     Defendant moves the court to dismiss the remaining claims (numbered as in the complaint):
25     (1) intentional discrimination against plaintiff on the grounds of plaintiff's race or color by
26         terminating her employment for racial reasons in violation of 42 U.S.C. § 1981;
27     (2) intentional retaliation against plaintiff because of her race-based opposition to unlawful
28         employment practices or policies by among other things, terminating her employment

1 and subjecting plaintiff to different job performance standards than those to which it
2 subjected non-African-Americans employees, in violation of 42 U.S.C. § 1981;
3 (4) intentional discrimination against plaintiff on the grounds of her physical and medical
4 conditions by terminating her employment in violation of California Government Code
5 § 12940(a);
6 (6) intentional discrimination against plaintiff on the grounds of her race or color by
7 terminating her employment for racial reasons in violation of California Government
8 Code § 12940(a);
9 (7) intentional retaliation against plaintiff by among other things, terminating her employment
10 for opposing practices which she believed violated provisions of the California Fair
11 Employment and Housing Act and the ADA and retaliating against her for participating
12 in protected proceedings in violation of California Government Code § 12940(h);
13 (8) intentionally terminated plaintiff's employment and retaliated against her in violation of
14 California's fundamental public policy against discrimination in employment on the
15 grounds of her race or color expressed in Article I, section 8 of the California
16 Constitution and California Government Code §§ 12920, 12921, 12926(h).
17 Defendant contends that plaintiff has not made a prima facie showing of discrimination or retaliation.
18 Defendant further contends that it had a legitimate, nondiscriminatory reason for its actions and that plaintiff
19 has not offered evidence sufficient to demonstrate that the defendant's explanation is pretextual.

## II. ANALYSIS

**A.  Procedural and Evidentiary Matters**

The court first deals with some procedural and evidentiary issues raised by the defendant.

**1.   Late-Filed Opposition**

Based on the original hearing schedule set forth by the court, plaintiff's opposition was due on November 11, 2005. Upon stipulation with defendant, plaintiff obtained a court order allowing plaintiff to file the opposition by November 18, 2005. Plaintiff did not file an opposition until November 21. Defendant claims that the court should disregard the late-filed opposition. The court acknowledges that plaintiff's opposition was filed late without offering any explanation. However, because defendant does not

assert—and the court does not find—that defendant has been prejudiced by plaintiff's delay, the court will consider plaintiff's opposition.

### 2. Defendant's Objection to Plaintiff's Supporting Declarations

Along with its opposition, plaintiff submitted an affidavit from Leslie Griffith. Moore Decl., Ex. 34. Defendant asserts that plaintiff did not disclose Griffith to defendant. Reply at 3; Exs. A-D. Under Federal Rule of Civil Procedure 26(a), a party must provide to the other party the name of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." Subsection (e) imposes upon a party the duty to supplement or correct the disclosure or response to include information obtained thereafter. Fed. R. Civ. P. 26(e). "A party that without substantial justification fails to disclose [the required] information, . . . is not, unless such failure is harmless, permitted to use as evidence . . . on a motion by witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Therefore, the court will not consider Griffith's affidavit unless plaintiff can offer evidence of disclosure or substantial justification for non-disclosure.

Defendant also objects to the content of Griffith's affidavit regarding the complaints she heard about Frances Politeo as inadmissible hearsay. The court finds that Griffith's statements that she heard that other nurses complained to Komejan are not admissible to prove that those nurses did make the alleged complaints. However, her statements about her own complaints to Komejan and others regarding Politeo are admissible to prove that the complaints were made, her personal opinion about Politeo's performance, and that she heard complaints from parents, although they are not admissible to prove the truth of the contents of the parents' complaints.

Defendant also objects various statements made in the declarations by plaintiff and Peggy Chavez as being comprised largely of inadmissible speculation and hearsay. These issues will be discussed during the course of analysis where relevant.

### 3. Remand to State Court

At oral argument, the plaintiff suggested that if the court dismisses the federal claims, the court should remand the state claims to state court. The court finds such an action would not be in the interest of judicial economy. The case is close to trial, the summary judgment issue has been fully briefed by both sides, and not suggestion was made prior to oral argument that remand was appropriate.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH                                                      6

**B.    Legal Standards**

    **1.    Summary Judgment**

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks omitted). The court decides whether there is any genuine issue of material fact viewing the facts in the light most favorable to the nonmoving party. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

    **2.    Employment Discrimination**

"[W]e employ *McDonnell Douglas*'s summary judgment evidentiary approach to employment discrimination claims under 42 U.S.C. § 1981." *Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004); *see also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-507 (1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "The *McDonnell Douglas* analysis imposes on the plaintiff an initial burden of establishing a prima facie case of discrimination." *Godwin*, 150 F.3d at 1220 (citing *McDonnell Douglas*, 411 U.S. at 802).[3] The *McDonnell Douglas* factors require a plaintiff to present evidence to establish that (1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably. *Id*. "The requisite degree of

---

[3]    The *Godwin* action was filed under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e. However, "[a]nalysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Services of Arizona, Inc.*, 374 F.3d 840, 850 (9th Cir. 2004), *see also EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n.7 (9th Cir. 1984) ("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a . . . claim under Title VII."). Furthermore, "California law under the FEHA mirrors federal law under Title VII." *Godwin*, 150 F.3d at 1219 (citing *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Clark v. Claremont Univ. Ctr. & Graduate Sch.*, 6 Cal. App. 4th 639, 662 (1992)).

proof necessary to establish a prima facie case for [employment discrimination] on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id*.

Once plaintiff establishes a prima facie case, "the burden then shift[s] to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct." *Id*. "The employer need not persuade the court that it was actually motivated by the proffered reasons: 'It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). "The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination." *Godwin*, 150 F.3d at 1220. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id*.

At the pretext stage, a plaintiff "must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing." *Id*. A plaintiff can either "directly persuad[e] the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (citing *Burdine*, 450 U.S. at 256; brackets omitted). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id*. In contrast, when the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, "specific" and "substantial" evidence of pretext is required to survive summary judgment. *Id*.

**C.     Plaintiff's First and Sixth Claims**

Plaintiff alleges in her first claim that defendant engaged in race- or color-based discrimination—violating 42 U.S.C. § 1981—by terminating her employment. Plaintiff alleges that defendant also violated California Government Code § 12940(a) arising from the same employment action. As an African American woman receiving an employment termination, plaintiff has met the first and third factors required by *McDonnell Douglas* for establishing a prima facie case. Defendant contends, however, that she was not performing according to its legitimate expectations and that there is no evidence that similarly situated employees were treated more favorably than plaintiff. MSJ at 13. Defendant

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH                                           8

presented various documents or communications showing complaints from doctors about plaintiff's job performance. *See, e.g.*, Komejan Decl., Exs. B, C, and F. Defendant also contends that other social workers in the Hem/Onc team were also criticized and thus were not treated more favorably than plaintiff. MSJ at 13.

In her opposition, plaintiff does not attempt to make a case of racial discrimination except presented as facts that Mendelow stated that she was a "big and black" woman which intimidated and threatened her co-workers. Plaintiff, however, counters that her 2002 performance evaluation was inaccurate in that it did not take into account her illness and absence because of medical leave and was based on subjective appraisal. Plaintiff contends that Komejan stated that because of the extremely heavy caseload, no hem/onc social worker had performed to the acceptable level. Pl.'s Decl. ¶ 38. Plaintiff presents declarations showing that Komejan also received complaints about Politeo, a white social worker in the hem/onc team, and that Komejan did not try to deal with the complaints. Moore Decl., Ex. 34 (Griffith Decl.) ("I emailed a complaint to Jack Komejan regarding her performance. . . . Komejan emailed me and suggested I speak to Fran Politeo."); Chavez Decl. ¶ 6 (stating no response from Komejan or Human Resources after Chavez complained to Komejan about Politeo's racial comments and Politeo's inappropriate physical advance toward Chavez).

However, plaintiff based her race discrimination claim on the termination of her employment. Plaintiff has not presented evidence that the decision in terminating plaintiff's employment was based on her performance or on racial reasons. Therefore, plaintiff's allegations that her evaluation was unfair and that complaints against other employees were not dealt with are immaterial. Plaintiff does not dispute that she failed to return to work or otherwise to communicate with defendant at the end of her personal leave and that she was on notice that such failure would result in termination of her employment.[4] Plaintiff has not presented any evidence that others were treated more favorably when they failed to show up to work almost a month after the end of a personal leave. Defendant, on the other hand, has presented evidence that plaintiff was fired for her failure to report to work after personal leave ended pursuant to a predetermined policy–a legitimate nondiscriminatory reason. Therefore, plaintiff has not made a prima facie

---

[4] Plaintiff has largely failed to address the circumstances and reasons for the termination of her employment.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH                                                9

case of discrimination based on race for defendant's termination of her employment or presented any evidence to rebut defendant's showing of a legitimate, nondiscriminatory reason for the termination. Accordingly, the court grants summary judgment in favor of defendant as to the first and sixth claims.

**D.     Plaintiff's Fourth Claim**

In her fourth claim, plaintiff alleges that defendant discriminated against her based on her disability by terminating her employment in violation of the California Fair Employment and Housing Act ("FEHA"), Government Code § 12940 *et seq*. Under the FEHA, a plaintiff "can establish a prima facie case by proving that: (1) plaintiff suffers from a disability; (2) plaintiff is a qualified individual; and (3) plaintiff was subjected to an adverse employment action because of the disability." *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 254 (2000).

The parties disagree whether "a qualified individual" is an element for plaintiff's disability discrimination claim and whether plaintiff satisfies the requirement. Plaintiff contends that the FEHA does not require that reasonable accommodation be limited to qualified individuals. Pl.'s Opp'n at 12 (citing *Bagatti v. Department of Rehabilitation*, 97 Cal. App. 4th 344, 347 (2002) (stating that "[u]nlike the ADA provision, Gov. Code, § 12940, subd. (m),[5] does not require that reasonable accommodation for disability be made only where the qualified individual able to perform the essential functions of the job.")). Plaintiff further contends that she was a qualified individual with the skills, training and experience to be a social worker.

Defendant counters that *Bagatti* is a case on failure to accommodate where there is no requirement that the plaintiff is a "qualified individual." Def.'s Reply at 6. Defendant argues that plaintiff's failure-to-accommodate claims have been dismissed and the only remaining disability discrimination claim is based on

---

[5]    The pertinent statutory language provides that:

> It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: . . . .
> (m) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in paragraph (1) or (2) of subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation.

Cal. Gov. Code, § 12940.

the alleged discriminatory termination.  Defendant contends, and the court agrees, that the "qualified individual" is a requirement for disability discrimination.  Defendant further contends that plaintiff was not a "qualified individual" because she could not perform essential elements of the positions offered to her based on her "clinic-only" restriction, which was not compatible with the "continuum of care" policy of the hospital.

Plaintiff asserts, however, that defendant's "continuum of care" requirement is only a pretext for not accommodating her three-days-a-week, clinic-only medical restrictions.  Plaintiff alleged that defendant granted accommodations to other employees, which were not offered to her, such as allowing Politeo to perform essential functions at home, letting pregnant women work reduced hours, and offering a position to a cerebral palsy patient that only required working two hours a week.  Pl.'s Opp'n at 14;  Pl.'s Decl. ¶ 24.[6] Plaintiff contends that defendant had an affirmative duty to offer or make known such similar accommodations to her.  Plaintiff also claims that defendant did not engage in a *bona fide* interactive process to accommodate her disability and that Komejan was hostile toward her and her request for reasonable accommodation.  Pl.'s Opp'n at 16.  Plaintiff claims that there were openings which were not offered to her and that Komejan told her that they were old positions when in fact, they were newly posted.  Plaintiff does not state whether she would have accepted one of those oppositions if offered.  A review of job descriptions for these positions, Pl.'s Decl., Ex. 4, indicates that they would not have met plaintiff's medical restrictions that she requested accommodations for.  Plaintiff also alleges that Komejan's statement that he was concerned that she left work at 4 p.m. without notifying him and his suspicion about plaintiff's requested medical leave showed that he was hostile toward plaintiff and her request for reasonable accommodation.  Pl.'s Opp'n at 15.  Plaintiff, though, has not alleged any fact that shows that the termination of her employment was based on disability.

Assuming that plaintiff has proven that she was a qualified individual by showing that defendant's "continuum care" policy was not strictly enforced, plaintiff has perhaps established a prima facie case of disability discrimination.  From the evidence of Komejan's apparently inaccurate statement about job postings, his suspicion towards plaintiff's request for medical leave, and his concern over plaintiff's leaving work early, one might be able to infer that Komejan failed to accommodate plaintiff.  However, plaintiff has

---

[6] Defendant objects to these declarations from plaintiff as evidence asserting that they were hearsay, lay opinion and were not based on plaintiff's personal knowledge.

1  lost her right to sue for discrimination based on defendant's alleged violation of California Government
2  Code § 12940(a) by failing and refusing to interact in good faith with her to achieve a reasonable
3  accommodation.  Order Granting Def.'s Mot. to Dismiss Pl.'s Third and Fifth Causes of Action; Granting
4  Req. for Judicial Notice.

5  The remaining disability discrimination claim, the fourth claim, is for discrimination based on
6  defendant's decision to terminate her employment.  Defendant has stated a legitimate non-discriminatory
7  reason for that termination.  As discussed above, plaintiff has not shown that defendant's stated reason is a
8  pretext either by direct evidence of discriminatory motive or by circumstantial evidence that the employer's
9  motives were different from its stated motives.  Therefore, the court grant summary judgment in favor of
10 defendant as to plaintiff's fourth claim.

11 **E.    Plaintiff's Second and Seventh Claims**

12 Plaintiff has two retaliation claims against defendant, her second and seventh causes of action.  To
13 establish a prima facie case of retaliation, plaintiff "must establish that: (1) she engaged in a protected
14 activity, such as the filing of a complaint alleging racial discrimination, (2) [defendant] subjected her to an
15 adverse employment action, and (3) a causal link exists between the protected activity and the adverse
16 action." *Manatt v. Bank of Am.*, 339 F.3d 792, 800 (9th Cir. 2003) (internal quotation marks omitted).
17 Plaintiff is not required to prove a causal connection between the disability and the adverse employment
18 action by direct evidence.  *Id*.  Plaintiff can establish causality by showing that "she was subject to an
19 adverse employment action" and that "she was replaced by a non-disabled person or was treated less
20 favorably than non-disabled employees."  *Id*.

21    **1.    Claim 2:  Retaliation Prohibited by 42 U.S.C. § 1981.**

22 Plaintiff alleges that defendant violated 42 U.S.C. § 1981 by retaliating against plaintiff because of
23 her internal racial discrimination complaint against Mendelow.  Section 1981 encompasses retaliation claims
24 if an employer retaliates against an employee with the intent to perpetuate act of racial discrimination.
25 *Manatt,* 339 F.3d at 800.  Defendant does not dispute that plaintiff engaged in protected activity for the
26 purposes of this claim by filing an internal racial discrimination complaint against Mendelow.  It is also
27 undisputed that Komejan was aware of the complaint.  Moore Decl., Ex. 25 (Komejan Depo.).
28

1    The adverse employment actions alleged by plaintiff in connection with claim 2 are terminating her employment and subjecting her to different job performance standards than defendant subjected non-African-Americans employees.  Plaintiff argues that the termination should be viewed as a final act of retaliation against her for her protected activities.  Plaintiff contends that Komejan retaliated against her right from the very first performance review he did for her to his refusal to accommodate her for her disability.

Defendant contends that plaintiff cannot establish a prima facie case of retaliation because plaintiff has not established a causal link between the protected activity and the adverse employment actions because the termination was too temporally removed from the 2001 internal complaint.  Defendant asserts that the allegedly negative job evaluation, although closer in time, does not qualify as an adverse employment action because plaintiff did not suffer any harm from it.  Plaintiff did not lose her job because of poor performance but because she failed to return to work as required.  Defendant further contends that even if plaintiff can establish a prima facie case of retaliation, defendant has legitimate, non-retaliatory reasons for both the poor performance review and the termination.

### a.    Performance Evaluation as an Adverse Employment Action

An adverse employment action is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity."  *Ray v. Henderson,* 217 F.3d 1234, 1242 (9th Cir. 2000).  Defendant relies on *Kortan v. California Youth Authority*, 217 F.3d 1104 (9th Cir. 2000), to assert that the negative performance reviews plaintiff received were not adverse employment actions because they did not lead to plaintiff's employment termination.

However, it is unclear that was the holding of the case.  In *Kortan*, one of the plaintiff's supervisors admitted he gave the plaintiff an undeserved poor performance evaluation in retaliation for something the plaintiff had done.  *Id*. at 1107.  Another supervisor disagreed with the poor evaluation and gave the plaintiff a better performance review and placed it in the plaintiff's file.  *Id*.  The poor evaluation was not seen by others and did not cause any damages to plaintiff.  *See id.* at 1112-13.  The court in that situation held it was not an adverse employment action against plaintiff.  *Id.* at 113.  However, the court in *Kortan* carefully distinguished *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987), which held that undeserved job reference letter is an adverse employment action even if it does not affect the perspective

employer's decision whether to hire the plaintiff. *See Kortan*, 217 F.3d at 1112-13. The court in *Kortan* nonetheless reiterated *Yartzoff*'s holding that "undeserved performance ratings, if proven, would constitute 'adverse employment decisions' cognizable under this section." *Kortan*, 217 F.3d at 1113 (quoting *Yartzoff*, 809 F.2d at 1376.)

In this case, the allegedly punitive performance evaluations were communicated to plaintiff. After the second negative evaluation, plaintiff was put on a performance improvement plan. Such actions, if plaintiff proved them to have been made with retaliatory intent rather than on plaintiff's actual performance, would be reasonably likely to deter plaintiff or others from making similar complaints. Thus, they are cognizable adverse employment actions for a retaliation claim.

### b. Causal Link

Plaintiff does not present any direct evidence that her performance evaluation by Komejan and the termination are causally linked to her internal complaint. Plaintiff contends that although Mendelow's comment that she was a "big black woman" may not be actionable as time-barred, it shows his intent. Plaintiff, however, does not assert that Mendelow retaliated against her, thus his intent is irrelevant to this claim. However, causation "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff*, 809 F.2d at 1376 (causal link inferred where plaintiff's first job transfer happened three months after the protected activity). Plaintiff's retaliation claim is based on Komejan's allegedly punitive performance reviews and refusal to accommodate her disability. Plaintiff, however, stated in her deposition that she did not feel that Komejan retaliated or discriminated against her from the time he became her supervisor to her first medical leave in April 2002.[7] Pl.'s Depo. at 62-63. Therefore, any retaliatory action against plaintiff would necessarily have started after April 2002. There is over a year between plaintiff's complaint and any retaliation. Plaintiff asserts that she

---

[7] It was during this period Komejan evaluated plaintiff for the first time. In her declaration filed along with the opposition, plaintiff explains that she made the statement because she did not know that Komejan knew of her complaint against Mendelow, which she found out later. Defendant calls plaintiff's explanation into question because Komejan was the Assistant Director at the time of the internal complaint and that the investigation report produced by Nichols made a specific recommendation to the Assistant Director. In any case, a party cannot create a genuine issue of material fact to survive summary judgment by contradicting his earlier version of the facts. *Block v. City of Los Angeles,* 253 F.3d 410, 419 n.2 (9th Cir. 2001). Thus, plaintiff cannot create an issue of material fact as to whether the first job performance review constituted a retaliation.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT—C-04-02744 RMW
WH/JAH 14

1  was retaliated against as soon as she returned from medical leave and asked for accommodation in August

2  2002.  However, plaintiff did not show direct or circumstantial evidence that the allegedly undeserved

3  performance evaluation and failure to accommodate were linked to her internal complaint in January 2001.

4  The court cannot infer a causal link when the passage of time has been so significant.  Therefore, plaintiff

5  has not establish a prima facie case of retaliation for her race discrimination complaint.

### c. Legitimate, Non-Retaliatory Reasons for Defendant's Actions

7  Defendant contends that even if plaintiff has made a prima facie showing of retaliation, defendant

8  had legitimate, non-retaliatory reasons for both the performance reviews and the termination.  Defendant

9  presented several e-mails from other employees and a summary of oncology team interviews[8] about

10  plaintiff, which detailed complaints that plaintiff did not conduct adequate psychological assessments, did

11  not report relevant psychosocial information to other team members, was unavailable for rounds, lacked

12  involvement with patients and parents, and had hard time accepting feedback.  The court finds that the

13  2002 evaluation can be supported by the comments Komejan received from interviews.[9]  Plaintiff does not

14  dispute that Komejan had received those comments.

15  Plaintiff argues, however, that the evaluation did not account for or acknowledge her three months'

16  medical leave and her illness, and that Komejan used subjective criteria to evaluate her.  Plaintiff claims that

17  Komejan improperly based the evaluation on an incident where she was unfairly accused of being confused

18  about a meeting three days after returning to work from a three-month-long medical leave, and that she was

19  wrongly accused of forging doctor's note and lying about a vacation.  Komejan stated that the e-mail he

---

[8] In 2002, during plaintiff's medical leave, Komejan conducted interviews with the Hem/Onc team members regarding the performance of the three social workers in the team in response to increased criticisms.  He compiled the results of the interviews in separate reports for each of the workers.  Komejan Decl. ¶ 6; Ex. C; *see also* Laurenson Decl., Ex. B (Christian Depo. at 102-03).

[9] The areas in which plaintiff was rated "not meeting expectations" in her 2002 performance evaluation are
   (1) complete psychosocial assessments and treatment plans for patients and families; understand their diagnoses and psychosocial implications
   (2) is able to proactively identify patient who would benefit from social work services and follows in-patient census and clinical schedules;
   (3) work collaboratively with inter-disciplinary teams
   (4) effectively communicates relevant psychosocial information to team members.
   (5) has effective inter-personal skill to resolve conflicts and is receptive to feedback.
   (6) demonstrate good rapport and cooperative working relationships.
Pl.'s Decl., Ex. 14.

received on August 8, 2002, complaining that plaintiff was confused about having a meeting schedule and refusing to attend "was probably one of the many communications that have to do with collaboration and communication and teamwork" that he considered in his rating of that category. Moore Decl., Ex. 26 (Komejan Depo. at 120). There is no evidence that the incident about plaintiff's request for the September 2002 leave was considered in the performance evaluation. However, the court finds because defendant has presented evidence supporting a legitimate basis for the evaluation, even if Komejan considered these incidents, that would not rebut defendant's legitimate reason.

Plaintiff also argues that Komejan stated that due to the heavy caseload, none of the three social workers performed up to expectations. Plaintiff also introduced evidence suggesting others, in particular, Politeo also received a lot of complaints. Moore Decl., Ex. 25 (Griffith Decl.). Plaintiff contends that she was the one who received the worst evaluation. Plaintiff, however, failed to present evidence to show that despite the complaints, Politeo's evaluation was unfairly more favorable than that of plaintiff.

Further, as discussed above, plaintiff has not presented evidence that rebuts defendant's proffered reason for terminating her employment. Therefore, the court grant summary judgment in favor of defendant as to plaintiff's second claim.

**2.    Claim 7: Retaliation Prohibited by California Government Code § 12940(h)**

In her seventh claim, plaintiff alleges that defendant violated California Government Code § 12940(h) by retaliating against her because of her request for disability accommodation and her EEOC/DFEH disability discrimination complaint. Plaintiff only alleges the termination of her employment as an adverse employment action. Although plaintiff's seventh claim does not contain allegations that defendant retaliated against her for requesting disability accommodation by giving her poor performance reviews, plaintiff spends much time discussing evidence that she was given punitive performance reviews starting right after she returned work in August 2002 from her first medical leave. Plaintiff also alleges that defendant did nothing to prevent Komejan's overt hostility and retaliation against plaintiff for her request for accommodation. However, plaintiff has not presented evidence to rebut the legitimate reason for her employment termination. Therefore, the court grants summary judgment in favor of defendant as to plaintiff's seventh claim.

### F. Plaintiff's Eighth Claim

In her eighth claim, plaintiff alleges that the termination of her employment by defendant was a violation of California's fundamental public policy against discrimination in employment on the grounds of her race or color. Because defendant has established a legitimate reason for the termination, and plaintiff has not presented evidence to rebut that reason,[10] the court grants summary judgment in favor of defendant as to the eighth claim.

## III. ORDER

For the foregoing reasons, the court grant defendant's motion for summary judgment on all remaining causes of action of the plaintiff's complaint.

DATED:    12/15/05                    /s/ Ronald M. Whyte
                                      RONALD M. WHYTE
                                      United States District Judge

---

[10] In fact, plaintiff has not made any argument supporting this claim in her opposition.

1 | **Notice of this document has been electronically sent to:**

**Counsel for Defendant:**
Michael A. Laurenson   mlaurenson@gordonrees.com
Alyson Cabrera            acabrera@gordonrees.com
Greta W. Schnetzler     gschnetzler@gordonrees.com

**Counsel for Plaintiff:**
Howard Moore, Jr.       moorlaw@aol.com
Jane Bond Moore

**Dated:**   12/20/05                                /s/ JH
                                                                **Chambers of Judge Whyte**